## No. C-202

**Albert L. Davis and Eva B. Davis v. Flatiron Materials Company**
(511 P.2d 28)

Decided June 11, 1973.

Fischer, Wilmarth and Hasler, Gene E. Fischer, Timothy W. Hasler, for petitioners.

Warberg & Mast, D. Chet Mast, Sonja E. Warberg, Yegge, Hall & Evans, Don R. Evans, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

In this proceeding certiorari was granted to review the decision of the Court of Appeals in *Davis v. Flatiron Materials,* 30 Colo. App. 237, 494 P.2d 607. The Court of Appeals affirmed the findings and judgment of the trial court, upholding the validity of a general release of liability executed by petitioners in favor of respondent. The claimed injuries and damages arose out of a rear-end automobile

collision. The trial court held the release to be a complete defense to the action and entered judgment of dismissal of petitioners' complaint. We affirm the judgment of the Court of Appeals.

I.

The accident out of which petitioners' claims arose occurred on May 2, 1967. Mrs. Davis did not appear to be injured at the time and so reported to the investigating police officer.

A report of the accident was made to respondent's insurance carrier. On May 11, 1967, petitioners executed a general release of all claims for an amount equal to the automobile damage estimated at $104.37. Before this sum was paid, Mrs. Davis commented she was suffering from pain in her right hand, arm, neck and shoulder. In view of these complaints, the insurance claims adjuster recommended that Mrs. Davis consult a doctor for examination for possible injuries.

Mrs. Davis then consulted an orthopedist of her own selection, Dr. Daniel M. Murray. Dr. Murray diagnosed Mrs. Davis' injury as a cervical sprain. This was confirmed by Dr. Leon Schreiner, a neurologist, to whom Mrs. Davis had been referred by Dr. Murray.

Dr. Murray's testimony indicated that Mrs. Davis had been suffering for some years from osteoarthritis in her cervical spine. Her history indicated she had fallen down some stairs approximately twelve years earlier and she had been treated in a hospital for neck pain by traction and physiotherapy. This neck pain persisted intermittently through the years prior to the auto collision. The doctor advised Mrs. Davis that the cervical sprain aggravated the arthritic condition in her spine, resulting in the increase of her symptoms.

Dr. Murray prescribed conservative treatment, consisting of physical therapy and neck traction. Mrs. Davis showed considerable improvement and on June 30, 1967, Dr. Murray advised that treatment be discontinued and that she need not see him again unless her symptoms worsened.

The medical report from Dr. Murray showed Mrs. Davis

had suffered a cervical sprain, resulting in total disability for approximately one week and partial disability for approximately thirty days, ending June 30, 1967. Dr. Schreiner's report confirmed the diagnosis of cervical sprain which he described as "traumatic flexion-extension injury of the paracervical soft tissues with traumatic irritation of right cervical 6 nerve root." He indicated a resulting disability of two weeks duration only. Both medical reports, at Mrs. Davis' request, were forwarded to the claims adjuster, who was aware of their contents at the time of the settlement of petitioners' claims.

Petitioners journeyed to Newton, Kansas on July 1st to visit a daughter. While en route, Mr. Davis became seriously ill and was taken to a hospital at Newton where he was confined for five weeks. During the period of her husband's confinement, Mrs. Davis' symptoms continued and gradually worsened. She did not advise her doctors of this situation. Apparently anxious to get her insurance claim resolved, she wrote the claims adjuster, advising of her husband's illness and asking that the accident claim forms be forwarded to her in Kansas. On July 20 the claims adjuster did so, including a second general release for $255.67, representing the total of the medical expenses incurred and the automobile damages. On July 22, Davises signed the release and returned it to the claims adjuster. Thereafter, on their return to Colorado, a claim draft was issued to petitioners. It was cashed by them on August 29, 1967, and the proceeds were used to pay the auto repairs and medical expenses incurred.

Mrs. Davis had been a medical secretary for twenty-three years and retired approximately nine months before the accident of May 1967. The record is clear, and both she and Mr. Davis testified, that they read and fully understood all of the terms of the general release, which specifically provided: "It is understood and agreed that this is a FULL AND FINAL RELEASE in full compromise settlement of all claims of every nature and kind whatsoever, and releases all claims whether known or unknown; suspected or unsuspected."

They testified they intended the release to be a full and final release of all claims.

Petitioners did not, and do not now, claim or in any manner intimate fraud, misrepresentation, imposition or overreaching by the claims adjuster or the respondent in procuring the release. It is quite clear that the initiative in obtaining the compromise settlement was taken by petitioners and that there was no apparent bargaining between the parties over the consideration for the release.

Mrs. Davis testified that her symptoms became worse in the months that followed, contrary to her expectations. She was treated during the months that followed by another orthopedist, Dr. Collopy.

Unfortunately, petitioners were involved in another automobile accident in June of 1969. The traumatic effects of this subsequent accident further aggravated Mrs. Davis' osteoarthritis. Eventually, spinal surgery was performed upon Mrs. Davis in February of 1970, and she testified that this operation relieved her of the pain and suffering that she had experienced in the past.

This action was commenced in March of 1968. We note in this connection that petitioners did not tender a return of the consideration for the release obtained.

## II.

Petitioners' theory for relief in the trial court was that of mutual mistake of fact as to the nature and extent of the injuries. The trial court entered extensive findings of fact and conclusions of law. Its critical finding of fact stated:

"In regard to Mrs. Davis's injuries suffered as a result of the automobile accident of May 2, 1967, all of the medical testimony supports the original *diagnosis* made by Dr. Murray and Dr. Schreiner as being correct. There is nothing in the evidence to suggest that Dr. Murray and Dr. Schreiner were not acting in the best interests of Mrs. Davis, nor is there any evidence to suggest a mistake in *diagnosis*. The Court is making no finding as to why Eva B. Davis's condition worsened, but the Court does find that there was no mistake made as to a past or present material fact that

could serve to set aside and void the release executed by plaintiffs on or about July 22, 1967, and the Court further finds that there was no *mutual mistake.* Mrs. Davis was fully advised by her doctors as to her condition and the evidence cannot and does not support a finding of mutual mistake. If there was a mistake, it was *unilateral* or a mistake self-induced on the part of plaintiffs."

The court then concluded the release was valid and petitioners' claim for damages against respondent was barred by the release. The action was then dismissed.

The Court of Appeals in affirming noted that the trial court's findings were well-grounded in the record and concluded the release was executed under conditions of fairness and good faith and operated as an effective bar to petitioners' claim for damages. We agree.

### III.

■■ Plaintiffs first contend that the evidence was uncontradicted that petitioners and defendant's agent (the insurance claims adjuster) were mistaken as to the severity and permanence of the injuries to Mrs. Davis at the time the release was signed, and thus the trial court erred as a matter of law in holding there was no mutual mistake.

The record is without contradiction that the diagnoses of Mrs. Davis' injuries by the examining and treating physicians were correct, and that the mistake of fact, if any, related not to her present condition but rather to her future course of recovery. The record is also clear that Mrs. Davis was advised that unless her symptoms worsened she would need no further treatment and she could expect a recovery from the cervical sprain consistent with her previous physical condition. She admittedly was not misled by the diagnoses, and admittedly she did not advise her doctors of the continuation and worsening of the symptoms. Her case to avoid the release was predicated upon the doctors' mistaken prognoses, which resulted from Mrs. Davis' failure to communicate to them the continuation and worsening of her complaints. The doctors testified that had they known of the continuation and worsening of the symptoms their estimate of future disability

would have been different. To this extent, the mistake, as the trial court found, was self-induced by reason of her failure to advise her doctors of the continued physical problems.

More significantly, however, the mistake in prognosis was a mistake of opinion and not of a past or present fact. Prognosis speaks of the future course of recovery from a disease or injury, as indicated by its nature and the special circumstances of the case. Although some courts appear to have permitted a rescission or avoidance of a release on the basis of a mutual mistake of prognosis, the sounder rule as we view it, and the one which our courts have adhered to in the past, is that the mutual mistake must relate to a present existing fact or a past fact. *Locke v. Atchison, Topeka and Santa Fe Railway Company,* 309 F.2d 811 (10th Cir. 1962). *See also, McCarthy v. Eddings,* 109 Colo. 526, 127 P.2d 883; *Colorado Co. v. Huntling,* 66 Colo. 515, 181 P. 129. For a collation of cases, see *Annot.,* 71 A.L.R.2d 82.

Well-reasoned cases supporting the rule, that in order to support a claim for relief from a contract of release the mistake relied upon must have been as to a past or present existing fact, are: *Robles v. Trinidad Corporation,* 270 F. Supp. 570 (1966); *Randolph v. Ottenstein,* 238 F. Supp. 1011 (1965); *Melvin v. Stevens,* 10 Ariz. App. 357, 458 P.2d 977; *Swilley v. Long,* 215 So. 2d 340 (Fla. App. 1968); *Bauer v. Griffin,* 104 N.J. Super. 530, 250 A.2d 603; *Spangler v. Kartzmark,* 121 N.J. Eq. 64, 187 A.2d 770; *Mangini v. McClurg,* 24 N.Y.2d 556, 249 N.E.2d 386; *Valentine v. Jester,* 210 Va. 83, 168 S.E.2d 94.

It is well-known that medicine is not an exact science and prognosticating the future course of recovery from known injuries is at best fraught with uncertainty. It is this uncertainty that motivates compromise and settlement agreements. Reason suggests that such contracts should not be set aside solely because the uncertainty in fact existed, as is demonstrated by a mistake in prognosis. Public policy favors the settlement of disputes, provided they are fairly reached, and if releases and settlements may be lightly ignored defendants, and their insurance companies repre-

senting them, would be discouraged from ever settling claims for personal injuries because of the uncertainty as to their finality. The proposition is well-stated in *Reinhardt v. Wilbur*, 30 N.J. Super. 502, 105 A.2d 415:

"The question to be determined is whether a duly executed general release may be invalidated upon the ground of mutual mistake of fact merely because an injury subsequently becomes more serious than the releasor believed it to be, or because she sustained injuries of which she was not aware, at the time of the execution of the release. The very suggestion of invalidation for such cause is contrary to firmly imbedded principles of law. We cannot shut our eyes to the realities of everyday practice. Persons involved in accidents or their representatives carry on and conclude negotiations precisely because there is uncertainty as to the extent of injuries or liability or both, and because of the uncertainty as to the outcome of any ensuing litigation. A general release duly executed and fairly obtained is a complete bar to further recovery for injuries sustained. Otherwise, the floodgates would open and not only persons like the plaintiff would seek avoidance, but also those who had paid substantial sums if supposedly serious injuries later proved to be minor."

The record demonstrates without contradiction that the release in question was fairly entered into, with full understanding by the Davises of its contents. We find that the trial court properly applied this rule to the facts of the instant case.

We have considered petitioners' other arguments for reversal and find them to be without merit.

The judgment of the Court of Appeals is affirmed.