539 P.2d 1349 (1975)
Clarence L. IRELAND et al., Plaintiffs-Appellants, and
The Polo Club Condominium Association, a Colorado Corporation, Intervenor-Appellant,
v.
Neil WYNKOOP, Individually, and as sole Proprietor of Christopher Leasing Company, et al., Defendants-Appellees.
The KIE CORPORATION, sometimes also known as Kie Corporation, a Colorado Corporation, et al., Plaintiffs-Appellees,
v.
The POLO CLUB CONDOMINIUM ASSOCIATION et al., Defendants-Appellants.
Clarence L. IRELAND et al., Plaintiffs-Appellants,
v.
Neil WYNKOOP, Individually, and as sole proprietor of Christopher Leasing Company, et al., Defendants-Appellees.
Nos. 71-301, 71-302 and 73-435.
Colorado Court of Appeals, Div. II.
June 24, 1975.
As Amended July 15, 1975.
Rehearing Denied July 15, 1975.
Certiorari Denied September 29, 1975.
*1353 White & Steele, P. C., John E. Clough, Williams, Erickson & Wallace, Wayne D. Williams, Denver, for plaintiffs-appellants Clarence L. Ireland and others, and plaintiffs-appellees, The Kie Corporation and others.
Quiat, Bucholtz & Bull, P. C., Alan H. Bucholtz, Denver, for intervenor-appellant and defendants-appellants, The Polo Club Condominium Ass'n, and others.
Inman, Flynn & Coffee, P. C., Robert D. Inman, Timothy A. Correll, Denver, for defendants-appellees Neil Wynkoop, and others, and plaintiffs-appellees The Kie Corporation, and others.
Selected for Official Publication.
PIERCE, Judge.
This case is a consolidation of three appeals filed in this court, No. 71-301, No. 71-302, and No. 73-435, which issued from two Denver District Court actions, No. C-17729 and No. C-19788.
Appellants are past and present owners of condominium units in The Polo Club, a high-rise condominium located in Denver. Appellee The Polo Club Condominium Association is a Colorado not-for-profit corporation, its membership being comprised of all The Polo Club condominium unit owners. Appellees Kie Corporation (Kie) and Polo Club, Inc., (the Corporation) are Colorado corporations controlled by appellee Wynkoop.
Under the aegis of the Corporation, which was record title holder of the condominium site, Wynkoop acted as promoter and developer of The Polo Club. Promotion for sale of the condominium units occurred primarily in 1965 and 1966.
In July of 1970, plaintiffs instituted action No. C-17729 by a complaint premised principally on allegations that Wynkoop had engaged in mismanagement, self-dealing, and breach of fiduciary duty. Plaintiffs sued as individuals, as representatives of a class comprised of all the condominium unit owners, and as representatives of the Association. For purposes of the derivative claims, the Association was named as a defendant. In late 1970, Kie and Wynkoop instituted action No. C-19788 seeking injunctions prohibiting plaintiffs[1] from interfering with performance of the contracts then under attack by plaintiffs, specific performance of the agreements, declarations that the agreements must be performed, and damages. Certain other injunctions were also sought.
The complainants in each district court action moved for a preliminary injunction, and each motion was granted. Plaintiffs have appealed from both orders regarding injunctions. In No. 71-301, plaintiffs appeal from an order which, in effect, dissolved the preliminary injunction order entered in their action, while No. 71-302 is plaintiffs' appeal from the granting of the preliminary injunction order in the action initiated by Wynkoop.
At the 1971 annual meeting of the Association membership which was held after entry of these orders, a Board of Managers favorable to Wynkoop was elected. Thereafter, a complaint in intervention that had been filed by the Association in the plaintiffs' action was dismissed, and the Association resumed its original status as a defendant in the suit. The Association filed an answer and four counterclaims, two of which were dismissed.
Subsequently, plaintiffs' complaint was dismissed and they filed an amended complaint asserting two "claims for relief." The wording of that complaint is confusing, but it appears that plaintiffs sued as individuals, as representatives of a class comprised of all the owners of condominium units, and as representatives of the Association. The "first claim" essentially was a repetition of the original complaint and consisted of the following allegations *1354 (our shorthand designation of the allegation is included in brackets):
(1) Wynkoop and Kie received secret "kick backs" from a company which had enclosed many of the condominium unit owners' balconies; [balcony kick back allegation]
(2) Wynkoop improperly received a commission on a policy insuring the common elements of The Polo Club; [insurance commission allegation]
(3) the Corporation did not furnish a limousine and laundry equipment to the Association as required by the condominium owners' purchase agreements, but, instead, the limousine and laundry equipment were rented from Christopher Leasing Company, a company owned by Wynkoop; [limousine and laundry allegation]
(4) Kie diverted Association funds to pay the salary of Kie "supervisory personnel" and to pay Kie's overhead expenses, in violation of the management contract; [salary diversion allegation]
(5) Wynkoop and Kie used Association common elements for business and entertainment unrelated to management of The Polo Club; [wrongful use allegation]
(6) Wynkoop, without authorization by the Association, received Association funds for rental of office equipment placed in the Association's offices; [rental of equipment allegation]
(7) Wynkoop, Kie and the Corporation caused improper disbursements from Association assessment funds, and caused the Corporation to neglect to pay its proper share of common expenses as a condominium unit owner, from the time that plaintiffs closed their unit purchases through December, 1968; [improper disbursements allegation]
(8) without disclosure to condominium unit buyers, the management contract involved self-dealing by Wynkoop and bound the Association for an unconscionable length of time; [management contract allegation]
(9) Wynkoop improperly leased the condominium owned by him for use as a beauty parlor, causing deterioration of the portion of The Polo Club parking area used by customers of the beauty salon. [beauty parlor allegation]
The "second claim" sought to have declared invalid a settlement agreement which was entered into after dismissal of the original complaint.
In response to the amended complaint, the various defendants filed multiple motions to dismiss. After a hearing, the trial court dismissed the complaint in its entirety as against the Association. The court also dismissed as against the other defendants, either in whole or in part, the various allegations of wrongdoing contained in the "first claim" for relief. In addition, the court dismissed the "second claim" as against defendants Wynkoop, Kie, and the Corporation, on the ground that the preliminary injunction in the action initiated by plaintiffs had been dissolved by operation of law when the original complaint was dismissed, and therefore the settlement agreement was valid.
The result of the trial court's rulings on these various motions was that the individual claims regarding the "balcony kick back" allegation and the individual and derivative claims regarding the "improper disbursements" allegation and the "beauty parlor" allegation, remained for litigation as against Wynkoop, Kie, and the Corporation. All other claims and allegations asserted by plaintiffs in the action were dismissed.
On June 8, 1973, the district court found that there was no just reason for delay, directed entry of judgment pursuant to C.R. C.P. 54(b), and stayed further proceedings in both district court actions. Plaintiffs' appeal followed.

*1355 Appealability of the Dismissal of Plaintiffs' Claim

On appeal, plaintiffs challenge the trial court's dismissal of the original complaint. The amended complaint, which iterated and expanded the original complaint, superseded the original complaint. Kalish v. Brice, 130 Colo. 220, 274 P.2d 600. Hence, any errors in the trial court's ruling regarding the original complaint were made moot or waived by the filing of the amended complaint, and cannot be raised on this appeal. American Concrete Agricultural Pipe Ass'n. v. No-Joint Concrete Pipe Co., 331 F.2d 706 (9th Cir.). Cf. Burson v. Adamson, 87 Colo. 451, 288 P. 623.
The next issue presented is whether the trial court's dismissal orders entered relative to the amended complaint constitute a final appealable judgment under C.R.C.P. 54(b).
In its dismissal rulings, the trial court disposed of the class action aspects of the "balcony kick back" allegation, the "improper disbursements" allegation, and the "beauty parlor" allegation, and the derivative aspects of the "balcony kick back" allegation. However, because the individual aspects of these allegations were retained, the disposition of the class aspects of these allegations and the disposition of the derivative aspect of the "balcony kick back" allegation are not appealable judgments under C.R.C.P. 54(b). Levine v. Empire Savings & Loan Ass'n, 34 Colo. App. 235, 527 P.2d 910, aff'd Colo., 536 P. 2d 1134 (announced June 16, 1975). Therefore, the partial dismissal of these allegations is not before this court.
Since there are multiple parties involved, the court's determination and direction have made its order granting the defendant Association's motion to dismiss the entire complaint an appealable judgment as to the Association. Similarly, under the multiple claims facet of C.R.C.P. 54(b), as will be discussed below, the dismissal of most of the claims against defendants Wynkoop, Kie, and the Corporation were also certifiable for appeal by the trial court, since they arose from different transactions or occurrences than the retained claims. See 10 C. Wright & A. Miller, Federal Practice and Procedure § 2657, at 50.
The parties have presented us with what are, apparently, highly contradictory authorities on this issue. Although the case law appears to be conflicting, the cases are reconcilable when correlated with a major change in the rule. The original federal and Colorado rule 54(b) provided that a court could enter a judgment disposing of one of several claims, where the court had decided the "issues material to a particular claim and all counterclaims arising out of the transaction or occurrence which is the subject matter of the claim." See 1935 C. S.A., R.C.P. 54(b). Under this formulation of the rule, it was properly held that a "transaction or occurrence" formed a single judicial unit and that no appeal lay under rule 54(b) where some portions of the judicial unit had not been determined by the trial court. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; Brown v. Mountain States Telephone & Telegraph Co., 121 Colo. 502, 218 P.2d 1063.
However, under the present version of F.R.C.P. 54(b) and C.R.C.P. 54(b), the judicial unit is a "claim for relief," and a "claim, counterclaim, cross-claim or third-party claim" may be a separate unit. As explained by the United States Supreme Court in Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297, the change from the old version of the rule was made largely to reduce the number of precautionary appeals taken as a result of the difficulty of determining whether several claims arose from a single transaction or occurrence.
Of course, where the appealed claims are factually distinct from the retained claims i. e., they arise from different transactions or occurrencesmultiple "claims for relief" are present, and the current Rule *1356 54(b) may be applied just like the old rule 54(b). See 10 C. Wright & A. Miller, Federal Practice and Procedure § 2657, at 50. The dismissed allegations in this case all arise from different transactions or occurrences than the retained "balcony kick back," "improper disbursements," and "beauty parlor" allegations. See Visual Factor, Inc. v. Sinclair, 166 Colo. 22, 441 P. 2d 643; Bohlender v. Oster, 165 Colo. 164, 439 P.2d 999; Beathune v. Cain, 30 Colo. App. 321, 494 P.2d 603.
However, the appealability of the dismissal of the "salary diversion" allegation and the "management contract" allegation is complicated by the fact that one of the Association's counterclaims seeks an injunction against the plaintiffs' interference with Kie's management of The Polo Club. This counterclaim arguably arises from the same transaction or occurrence as these two allegations. Thus, the question arises as to whether the existence of this counterclaim operates to preclude certification of these allegations under C.R.C.P. 54(b).
There is no Colorado case controlling on this issue, but the federal cases now adopt a well-defined policy that adjudication of a claim can be made a final judgment pursuant to F.R.C.P. 54(b) even though another party's claim arising out of the same transaction or occurrencein this case, defendant's counterclaimremains pending. See 10 C. Wright & A. Miller, Federal Practice and Procedure § 2657, at 51; Bendix Aviation Corp. v. Glass, 195 F.2d 267 (3d Cir.). The rationale is clearly stated in Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311, where the court said:
"The amended rule, in contrast to the rule in its original form, treats counterclaims, whether compulsory or permissive, like other multiple claims. . . . Therefore, under the amended rule, the relationship of the adjudicated claims to the unadjudicated claims is one of the factors which the District Court can consider in the exercise of its discretion. If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable."
We adopt the reasoning of Cold Metal as being applicable to C.R.C.P. 54(b) and hold that the trial court had discretion to certify its adjudication of these two allegations, in spite of the Association's pending counterclaims.
We realize, however, that the trial court's decision in certifying one of its orders must be exercised with extreme care where a pending counterclaim is involved, 6 J. Moore, Federal Practice and Procedure ¶ 54.35[1], at 585, and this is particularly true where the counterclaim arguably arises from the same transaction or occurrence as the adjudicated claim. Cold Metal Process Co. v. United Engineering & Foundry Co., supra; Gaetano Marzotto & Figli S.P.A. v. G. A. Vedovi & Co., 28 F. R.D. 320 (S.D.N.Y.). Nevertheless, while it may have been a wiser course to resolve the Association's counterclaim before certifying dismissal of the "salary diversion" allegation, and the "management contract" allegation, we cannot say that the court's certification constituted an abuse of discretion.
The counterclaim alleged generally that plaintiffs had been interfering with the management of The Polo Club, and by it, Kie and Wynkoop sought an injunction against such interference. However, it did not specify that the interference sought to be enjoined was the prosecution of action No. C-17729. Thus, the dismissed claims and the retained counterclaim are not so inherently inseparable or intertwined that certification of dismissal of the claims was an abuse of discretion. Cf. Gas-A-Car, Inc., v. American Petrofina, Inc., 484 F.2d 1102 (10th Cir.).
Hence, the trial court's determination and direction pursuant to C.R.C.P. 54(b) *1357 was effective to create an appealable judgment as against Wynkoop, Kie, and the Corporation as to all of the allegations of the first claim that were completely dismissed.[2]

Dismissal of the Claims Against Wynkoop, Kie, and the Corporation
The dismissals of the allegations against Wynkoop, Kie, and the Corporation were predicated upon the assumption that the dismissed claims were Association claims rather than individual condominium unit owners' claims, and that therefore they were extinguished by the settlement agreement entered by the Association and these defendants. Of course, if the claims were individual claims rather than derivative claims, the claims could not be compromised by the Association's settlement agreement, and the trial court's dismissal of those claims based upon the settlement agreement would be error. Cf. Montgomery Ward & Co., Inc. v. Sterling, Colo., 523 P.2d 465; Crouch v. West, 29 Colo. App. 72, 477 P.2d 805. Therefore, in adjudging the propriety of the trial court's action, we must initially determine whether the dismissed claims are claims held by the Association or claims held by the individual condominium unit owners. Upon examining the underlying bases of these claims, we hold that the dismissed claims, with one exception to be discussed later, are more appropriately characterized as Association claims.
Virtually all of the dismissed claims involved allegations that Wynkoop, who held a fiduciary position as the Association's agent and promoter, breached his fiduciary duties through mismanagement, self-dealing, and secret profits. In Colorado, such claims traditionally have been considered as corporation claims, whether raised by the corporation itself or by the stockholders in a derivative suit. See Swafford v. Berry, 152 Colo. 493, 382 P.2d 999; Holland v. American Founders Life Insurance Co., 151 Colo. 69, 376 P.2d 162; Northwest Development, Inc. v. Dunn, 29 Colo.App. 364, 483 P.2d 1361. Moreover many of the dismissed claims involved recovery of corporate assets or concerned contracts to which the Association, rather than individual condominium unit owners, was a contracting party. See Schaffer v. Universal Rundle Corp., 397 F.2d 893 (5th Cir.); Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368. Thus although the Association will eventually assess the unit owners for the management expenditures, the owners' concern in these matters is only indirect, through the Association, and therefore, the Association is the proper claimant. See Plaza Del Prado Condominium Ass'n, Inc. v. GAC Properties, Inc., 295 So.2d 718 (Fla.App.); Northridge Cooperative Section No. 1 v. 32nd Avenue Construction Corp., 2 N.Y.2d 514, 161 N.Y.S.2d 404, 141 N.E.2d 802. Contra, Friendly Village Communinity Ass'n., Inc., No. IV v. Silva & Hill Construction Co., 31 Cal.App.3d 220, 107 Cal.Rptr. 123.
Finally, characterization of these claims as Association claims invokes the benefits of C.R.C.P. 23.1 which avoids multiple suits by condominium unit owners against the Association or against the wrongdoers. See Bell v. Arnold, 175 Colo. 277, 487 P.2d 545. The challenged transactions should be tested by the rules generally applicable to business transactions, see, e. g., Colorado Management Corp. v. American Founders Life Insurance Co., 145 Colo. 413, 359 P.2d 665; Rywalt v. Writer Corp., 34 Colo.App. 334, 526 P.2d 316; and the requirements for demands upon the directors and members will encourage non-judicial resolution of this type of dispute. See Bell v. Arnold, supra. Thus, as stated above, we conclude that the trial court correctly characterized the dismissed claims as claims held by the Association rather than as claims held by the individual condominium unit owners. Plaintiffs contend that, even if the claims belonged to the Association *1358 rather than to the individual condominium unit owners, dismissal of the claims was error because the settlement agreement was invalidated by the preliminary injunction previously entered in this action, or by C.R.C.P. 23.1, or by the general principles of corporation law relating to derivative suits. We consider these contentions in the order listed.
In Colorado when leave is given to replead and an amended complaint is filed, a preliminary injunction continues despite the dismissal of the complaint upon which the injunction was based. See White v. Nuckolls, 49 Colo. 170, 112 P. 329. C.R.C. P. 62 and 65 have no bearing on this rule.
Thus the preliminary injunction still was in effect at the time the settlement agreement was made; however, we hold that the preliminary injunction did not bar or invalidate the settlement agreement.
The preliminary injunction, ordered pursuant to plaintiffs' original complaint, enjoined defendants from assessing the condominium unit owners for wages for "supervisory help," for rental of the limousine and laundry equipment, and for expenses of operating the managing agent's office. It also enjoined the defendants from "disposing of or making unavailable to members of The Polo Club Condominium Association" the limousine, the laundry equipment, and the furnishings and equipment of the managing agent's office.
The settlement agreement made by the Association, Wynkoop, and Kie addressed itself to these same issues. However, it violated neither the letter nor the spirit of the injunction.
Specifically, the settlement agreement did not violate the portions of the preliminary injunction which prohibited assessment of Association members; that is, it did not affect any existing assessment, but merely announced an intent to affect assessments in the future. The only portion of the settlement agreement which formally conflicted with the preliminary injunction was a provision that conveyed the limousine and laundry equipment to the Association in exchange for the rentals already paid. Although this action technically violated the trial court's order not to "dispose" of the goods, it was consonant with the trial court's stated intent, which was to continue the availability of the limousine and laundry equipment for use by the Association members.
Furthermore, compliance with an injunction must be tested by the spirit and intent of the injunction order, as well as by the literal language of the order. See Folk v. Standard Business Forms, Inc., 270 F.Supp. 147 (W.D.N.C.). And, it is evident that the trial court granted the preliminary injunction for the usual reason that such injunctions are grantedto preserve the status quo and prevent further harm. Combined Communications Corp. v. Denver, Colo., 528 P.2d 249. We can discern no intent by the trial court to prevent settlement of the disputes in this case, and since public policy favors the settlement of disputes, we are unwilling to presume such intent. Davis v. Flatiron Materials Co., 182 Colo. 65, 511 P.2d 28. Therefore, we conclude that the settlement agreement did not violate the preliminary injunction so as to make it voidable.
We also must reject the contention that C.R.C.P. 23.1 barred the efficacy of the settlement agreement. Although C.R.C.P. 23.1 provides that "[t]he action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs," that provision was intended to prevent private settlements between a plaintiff shareholder and the defendants. Wolf v. Barkes, 348 F.2d 994 (2d Cir.), cert. denied, 382 U.S. 941, 86 S.Ct. 395, 15 L.Ed.2d 351. In Wolf, the second circuit held that F.R.C.P. 23(c), which was substantially similar to the present C.R.C.P. 23.1, did not prevent an out-of-court settlement by a corporation involved in a derivative suit. We believe that the Wolf result *1359 helps to further the public policy in favor of out-of-court settlement of disputes. See Davis v. Flatiron Materials Co., supra. Also, the condominium unit owners' rights are sufficiently protected by their opportunity to challenge the settlement agreement itself. See generally Wolf v. Barkes, supra; Haudek, The Settlement and Dismissal of Stockholders' ActionsPart II: The Settlement, 23 Sw.L.J. 765.
Finally, we have not found any principles of law relating to derivative suits which might preclude the settlement agreement from being effective. Although Wolf v. Barkes, supra, dealt with rules of civil procedure, much of its reasoning would be applicable even in the absence of such rules. See Goodwin v. Castleton, 19 Wash.2d 748, 144 P.2d 725. Plaintiffs' contention that the settlement agreement is invalid because the wrongdoing alleged in the amended complaint can be ratified only by a unanimous vote of the members is a non sequitur. The settlement does not, in substance, ratify the alleged wrongdoing, it merely settles a disputed or alleged claim for the wrongdoing.
Therefore, we hold that the settlement agreement was valid, and the Association's claims which were encompassed by the settlement agreement were merged or barred by the agreement. Pacheco v. Delgado, 46 Ariz. 401, 52 P.2d 479. Cf. Cold Spring Tungsten, Inc. v. American Steel & Iron Works, Inc., 146 Colo. 415, 361 P.2d 773. Thus, dismissal of the claims was proper.
The single exception to the conclusions reached in the foregoing paragraphs concerns the dismissed claim which we call the "limousine and laundry" allegation. This allegation states that the Corporation breached its contracts with the individual condominium unit buyers by failing to "furnish" a limousine and laundry equipment. It constitutes a claim by the individual owners against the Corporation for breach of their purchase agreements, and therefore, as to this claim, the trial court's characterization of the claim as an Association claim was erroneous.
Since the "limousine and laundry" allegation did not state an Association claim, it could not be compromised by the settlement agreement. However, other rulings of the trial court dismissed the class action aspects of this allegation but retained the individual aspects. Under the holding of Levine v. Empire Savings & Loan Ass'n., supra, these rulings could not be made appealable final judgments under C.R.C.P. 54(b). Therefore, dismissal of this allegation is not before this court.
The "second claim" of the amended complaint sought a declaration that the settlement was null and void, and sought an injunction against the implementation of the agreement. As basis for this relief, plaintiffs alleged that the settlement agreement violated the preliminary injunction and C. R.C.P. 23.1. We have already resolved these issues adversely to plaintiffs and therefore we affirm the trial court's granting of these defendants' motion to dismiss the "second claim." We wish to point out that the "second claim" did not challenge the substance of the settlement agreement, and we make no comment thereon.

Dismissal of the Complaint Against the Association
Next we consider the trial court's order granting the Association's motion to dismiss the complaint. The plaintiffs did not seek any relief from the Association; it was joined as a defendant in the suit solely for purposes of the derivative claims. See Peck v. Peck, 33 Colo. 421, 80 P. 1063. As already discussed, the majority of the derivative claims were dismissed pursuant to motions by the other defendants. Therefore, at this stage in the discussion, the granting of the Association's motion to dismiss is important only as it relates to derivative claims assertedly raised by the "improper disbursements" allegation and the "beauty parlor" allegation.
We hold that these two allegations do, indeed, state claims by the Association rather than claims by the individual condominium unit owners. In particular, the *1360 "improper disbursements" allegation involves alleged improper management of the Association assessment funds, and the "beauty parlor" allegation involves Wynkoop's allegedly improper lease of a condominium unit which caused deterioration of the condominium's parking area, thereby creating assessable repair expenses. Although the condominium unit owners must eventually pay their proportionate share of the assessments, and, in fact, the complaint alleges that the owners already have paid for the parking area repair, we have already concluded that this fact alone is insufficient to make claims regarding the assessment funds condominium unit owners' claims rather than Association claims.
Therefore, these two allegations, being Association claims, were proper subjects of attack by the Association. Although several courts have held that a corporation in a derivative suit must remain strictly neutral, see, e. g., Holden v. Construction Machinery Co., 202 N.W.2d 348 (Iowa), at least as to matters other than the shareholders' right to bring suit on behalf of the corporation, see Slutzker v. Rieber, 132 N.J.Eq. 412, 28 A.2d 528, there is authority allowing the corporation a more active role in the litigation. See National Bankers Life Insurance Co. v. Adler, 324 S.W.2d 35 (Tex.Civ.App.). Since the Association's objections to the claims raised by these two allegations only involve compliance with C.R.C.P. 23.1, we need hold only that a corporation may contest a shareholder's compliance with that rule, see Nussbacher v. Continental Illinois Bank & Trust Co., 61 F.R.D. 399 (N.D.Ill.E.D.), and we will not consider whether a corporation could raise substantive challenges to derivative claims.
C.R.C.P. 23.1 requires:
"The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."
The complaint alleges a demand upon the Board in 1970 and a demand upon the Association membership in 1972. Ignoring plaintiffs' apparent failure to present a demand to the most recently elected Board prior to the filing of the amended complaint, see Nelson v. Pacific Southwest Airlines, 399 F.Supp. 1025 (S.D.Cal.), and cases cited therein, we hold that the demands made were insufficient to furnish a basis for raising these particular claims in a derivative suit.
The demands upon the Board alleged in the complaint concerned only the claims which were dismissed on the motions of Wynkoop, Kie, and the Corporation. They made no mention of the claims raised by the "improper disbursement" allegation and the "beauty parlor" allegation. A corporate shareholder or member cannot, consistent with the requirements of C.R.C. P. 23.1, make a demand upon the corporation as to certain claims, and then attempt to sue derivatively on other claims. Cf. Haldi v. Continental Investment Corp., 50 F.R.D. 275 (N.D.Ga.). Such a practice would defeat the purpose of the rule to encourage the corporation itself, rather than the shareholders in its behalf, to sue for redress of corporate claims. Moreover, the general allegation that the plaintiffs "have diligently endeavored, over several years last past, to have the Board of Managers of the defendant Association and the Association membership as a whole prosecute and resolve the claims involved in this action, but said efforts have been unavailing," completely lacks the particularity required by C.R.C.P. 23.1. See Stadin v. Union Electric Co., 309 F.2d 912 (8th Cir.), cert. denied, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415; Haldi v. Continental Investment Corp., supra.
Furthermore, the complaint contains no allegations which might furnish a basis for excusing the demands upon the Board and membership as to these claims.
*1361 The allegation that the Board and membership settled other disputed corporate claims does not create a presumption that those bodies would not seek to enforce the corporate claims raised in the "improper disbursements" and "beauty parlor" allegations, nor does the allegation that a majority of the Board and the membership were "favorable" to Wynkoop amount to an allegation of dominance such that the court could presume that these corporate claims against Wynkoop would be foresworn. Cf. Baffino v. Bradford, 57 F.R.D. 79 (D. Minn.). Moreover, the only serious objections raised by the Association to the claims raised by the "improper disbursements" and "beauty parlor" allegations were procedural objections regarding plaintiffs' right to sue in the Association's behalf; therefore, plaintiffs cannot use the Association's antagonism to the suit as an excuse for failing to make the requisite demands. See In re Kauffman Mutual Fund Actions, 479 F.2d 257 (1st Cir.), cert. denied 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107; Nussbacher v. Continental Illinois Bank & Trust Co., supra.
Since the plaintiffs failed to make the demands required by C.R.C.P. 23.1 as to the derivative claims stated by the "improper disbursements" allegation and the "beauty parlor" allegation, and failure to make the demands cannot be excused, the Association's motion to dismiss was correctly granted against these claims. See Bell v. Arnold, supra.
Although the motions by Wynkoop, Kie, and the Corporation did not address these two allegations, the Association is an essential party in a derivative suit because the claims for relief belong to the corporate Association, not to the formal plaintiffs. In the Association's absence, the derivative claims must be dismissed. See, e. g., Peck v. Peck, supra. See also Larimer & Weld Reservoir Co. v. Ft. Collins Milling & Elevator Co., 60 Colo. 241, 152 P. 1160. Thus, the granting of the Association's motion to dismiss the claims raised by the "improper disbursements" allegation and the "beauty parlor" allegation has the effect of dismissing those claims as against defendants Wynkoop, Kie, and the Corporation. State ex rel. Great Fidelity Life Insurance Co. v. Circuit Court, Ind., 288 N.E.2d 143. Since the Association was made a party solely for purposes of the derivative claims, the dismissals gained by the other defendants inure to the Association's benefit.

Appeal of Dissolution of Preliminary Injunction Granted Plaintiffs
The purpose of a preliminary injunction is to "preserve status quo until final hearing and a determination as to the controverted rights of the parties." Spickerman v. Sproul, 138 Colo. 13, 328 P.2d 87 (emphasis added). This injunction pertained only to matters which subsequently have proceeded to final judgments of dismissal or have been remedied. Therefore, the preliminary injunction is no longer in effect, and the appeal therefrom is moot. See Baldwin Star Coal Co. v. Quinn, 46 Colo. 590, 105 P. 1101. See also Annot., 11 A.L.R.2d 1407 § 6.

Appeal from Preliminary Injunction Granted Wynkoop
The injunction entered in the action initiated by Wynkoop enjoined the Association, several individuals comprising the Association's Board of Managers, their agents, servants, employees, and attorneys, from: (1) Preventing Kie from acting as the Association's managing agent, (2) collecting or attempting to collect the monthly assessments, and (3) preventing Kie from using The Polo Club business office. The injunction was expressly made effective "pending the final hearing and determination of this action." There has been no final hearing or determination in this action. The record in this action shows only the complaint, the documents relative to the preliminary injunction and the appeal therefrom, and a June 8, 1973, order staying further proceedings. Therefore, this appeal is not moot.
*1362 We hold that the portion of the trial court's order which enjoined the Association and its officers from preventing Kie's continuance as managing agent was an abuse of discretion and therefore must be reversed. See Crosby v. Watson, 144 Colo. 216, 355 P.2d 958. The management agreement provided that Kie would perform specified management tasks, in exchange for a fee, until December 31, 1979. This created an agency relationship rather than an agency coupled with an interest or a power given as security. See Lowell v. Hessey, 46 Colo. 517, 105 P. 870; Restatement (Second) of Agency § 138; Annot., 28 A.L.R.2d 1243. Therefore, the Association has the power to terminate the agency at any time, even though the termination may breach the management agreement. Lowell v. Hessey, supra; Chain v. Pye, 429 S.W.2d 630 (Tex.Civ.App.); Restatement (Second) of Agency § 118. Enjoining the principal from terminating the agency relationship is tantamount to specific performance of the agency contract, see Van Name v. Federal Deposit Insurance Corp., 130 N.J.Eq. 433, 23 A.2d 261, aff'd, 132 N.J.Eq. 302, 28 A.2d 210, which is improper. Restatement (Second) of Agency § 463, comment c. Cf. Chain v. Pye, supra (promoter's contract not specifically enforceable). Thus, this portion of the injunction cannot stand.

Disposition
(1) We reverse that portion of the preliminary injunction in action No. C-19788 (No. 71-302) which enjoined the Association and its officers from terminating Kie's agency.
(2) The "limousine and laundry" allegation, the class aspects of the "balcony kick back," "improper disbursements" and "beauty parlor" allegations and the derivative aspects of the "balcony kick back" allegation of No. C-17729 (No. 71-301 and No. 73-435) are dismissed from this appeal. There are no final judgments regarding them because the individual claims in these allegations remain undisposed of in the trial court.
(3) We affirm the balance of the orders of the trial court in all three appeals.
ENOCH and STERNBERG, JJ., concur.
NOTES
[1] Although the parties in the two district court actions are not identical, for ease of reference the term "plaintiffs" will be used to denote the parties adverse to Wynkoop, and the term "defendants" will be used to signify the parties that are defendants in No. 73-435.
[2] See, however, infra page 1359 concerning the "limousine and laundry" allegation.