The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 31, 2018

## 2018COA82

**No. 17CA1296, *Arline v. American Family Mut. Ins. Co.* — Insurance — Motor Vehicles — Uninsured/Underinsured — Settlement and Release Agreements**

A division of the court of appeals considers whether the supreme court's decision in *Calderon v. American Family Mut. Ins. Co.*, 2016 CO 72, renders unenforceable a prior agreement to release an insurer and settle a negotiated claim for UIM benefits because the insurer reduced its offers of settlement by the amount of MedPay benefits paid. The division concludes that *Calderon* does not impact such settlement agreements and affirms the district court judgment dismissing the plaintiff's complaint as barred by the valid release.

Court of Appeals No. 17CA1296
City and County of Denver District Court No. 16CV34390
Honorable Elizabeth A. Starrs, Judge

Anitra Arline,

Plaintiff-Appellant,

v.

American Family Mutual Insurance Company,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE RICHMAN
Webb and Fox, JJ., concur

Announced May 31, 2018

Bradley A. Levin, Susan S. Minamizono, Denver, Colorado; Patricia Meester, Keith R. Scranton, Aurora, Colorado, for Plaintiff-Appellant

Faegre Baker Daniels LLP, Michael S. McCarthy, Todd P. Walker, Matthew D. Clark, Denver, Colorado, for Defendant-Appellee

¶ 1 Plaintiff, Anitra Arline, appeals a district court's judgment dismissing her complaint pursuant to C.R.C.P. 12(b)(1). Arline sought class action certification and damages resulting from her receipt of benefits under her uninsured motorist/underinsured motorist (UM/UIM) policy and the allegedly unenforceable release and trust agreement (Agreement) she concurrently entered into with defendant, American Family Mutual Insurance Company (American). We affirm.

## I. Background

¶ 2 Arline's complaint alleges that she was injured by an underinsured motorist in November 2014. She submitted claims to American under insurance policies which provided $5000 in MedPay coverage and a total of $50,000 in individual UIM coverage. American paid $5000 in MedPay benefits on Arline's behalf to medical providers. American negotiated Arline's damages under her UIM coverage to be $27,000 after subtracting the $5000 in MedPay benefits already paid. Arline alleges that American confirmed the subtraction of $5000 in a letter to Arline in June 2015.

¶ 3    In November 2015, Arline, represented by counsel, accepted

the $27,000 payment and signed the Agreement stating, as relevant

here, as follows:

> For the sole consideration of Twenty-Seven
> Thousand Dollars . . . paid by [American], . . .
> receipt of which is hereby acknowledged,
> Anitra Arline hereby fully and forever release(s)
> and discharge(s) [American] from all claims,
> demands, actions and rights of action, of
> whatever kind or nature which she now has or
> may hereafter have against [American] under
> [her UIM policy], on account of bodily injury
> sustained [as a result of the November 2014
> accident].
>
> Anitra Arline understand(s) and agree(s) that
> the sum paid as consideration for this Release
> and Trust Agreement was *agreed to as a
> compromise* to avoid expense and to terminate
> all controversy or claims for benefits [under
> the UIM policy for the November 2014
> accident] and that her acceptance of such
> payment shall be a complete bar to any causes
> of action or claims against [American] now
> existing or which may arise in the future . . . .

(Emphasis added.)

¶ 4    In November 2016, one year after Arline settled, the supreme

court held for the first time that section 10-4-609(1)(c), C.R.S. 2017,

prohibits insurers from reducing the UIM benefits paid on a claim

by the amount of MedPay benefits paid on that claim, which the

2

court termed a "setoff." *See Calderon v. Am. Family Mut. Ins. Co.*, 2016 CO 72, ¶ 16 ("To the extent that [the plaintiff's] insurance purports to allow the setoff in this case, it is contrary to the setoff prohibition of section 10-4-609(1)(c) and is unenforceable."); *see also* § 10-4-609(1)(c) ("The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, . . . medical payments coverage."). Calderon's counsel now represents Arline.

¶ 5 Shortly after the *Calderon* decision, Arline sued American on her own behalf, asserting breach of contract based on the facts described above, and seeking class certification based on the assertion that American had unlawfully reduced UIM payments to similarly situated class members using a MedPay setoff. American responded that the Agreement was a complete bar to the cause of action in simultaneous motions to dismiss for (1) lack of standing, pursuant to C.R.C.P. 12(b)(1); and (2) failure to state a claim upon which relief can be granted, pursuant to C.R.C.P. 12(b)(5).

¶ 6 Arline argued that the Agreement was unenforceable because it was contrary to applicable law and public policy. However, the district court found that Arline's arguments were relevant only to

3

the terms of her insurance policy and not to the Agreement. Accordingly, the court found that the Agreement was enforceable, granted American's motion to dismiss for lack of standing, and did not address the Rule 12(b)(5) motion because it was rendered moot by the Rule 12(b)(1) dismissal.

¶ 7    We agree with the district court that the Agreement is enforceable and that Arline's claims are therefore barred.

## II. The Issue on Appeal

¶ 8    Arline reiterates the arguments made to the district court, contending that the court erred in dismissing her complaint because American's payment of $27,000 pursuant to the Agreement caused her to suffer an injury-in-fact to a legally protected interest. *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004) (identifying two requirements for standing in Colorado: the plaintiff must have suffered "(1) an injury-in-fact, (2) to a legally protected interest").

¶ 9    American responds that the propriety of the dismissal rests on whether the Agreement is enforceable.  We agree with American.

## III. Standard of Review and Applicable Law

¶ 10    We review de novo both (1) a trial court's grant of a motion to dismiss, *Allen v. Steele*, 252 P.3d 476, 481 (Colo. 2011); and (2)

4

whether a contract provision is enforceable or void as against public policy, *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1045 (Colo. 2011). Under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction. *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001).

¶ 11 "A release is the relinquishment of a vested right or claim to a person against whom the claim is enforceable." *Neves v. Potter*, 769 P.2d 1047, 1049 (Colo. 1989). An insured may agree to a term of settlement and release as the insured sees fit, "so long as [the term] does not violate statutory prohibitions or public policy." *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998). While a contract provision is void if the interest in enforcing it is clearly outweighed by a contrary public policy, we must be cognizant that court invalidation of a contract provision infringes on the "essential freedoms of . . . the right to bargain and contract." *Superior Oil Co. v. W. Slope Gas Co.*, 549 F. Supp. 463, 468 (D. Colo. 1982), *aff'd*, 758 F.2d 500 (10th Cir. 1985).

¶ 12 If a release agreement is valid, dismissal of claims encompassed by the agreement is proper. *See Ireland v. Wynkoop*, 36 Colo. App. 205, 220-21, 539 P.2d 1349, 1359 (1975); *see also* C.R.C.P. 8(c) (a release is an affirmative defense to a complaint).

## IV. Discussion

¶ 13    We conclude that the Agreement is valid and enforceable because even under *Calderon*'s construction of section 10-4-609(1)(c), the interest in enforcing the Agreement — which Arline entered into voluntarily while represented by counsel who was fully informed that certiorari had been granted in *Calderon* — is neither clearly outweighed by a contrary public policy nor contrary to law.

¶ 14    First, it is not clear to us that the Agreement is contrary to public policy. Although a term of an insurance policy "is void and unenforceable if it violates public policy by attempting to 'dilute, condition, or limit statutorily mandated coverage,'" we do not agree with Arline that the same standard applies to a settlement and release agreement entered into upon payment of insurance benefits in a negotiated amount. *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 345 (Colo. 1998) (citation omitted). Unlike the plaintiff in *Calderon*, Arline is not challenging any provision of her policy.

¶ 15    We agree with Arline's assertion that, in Colorado, the purpose of UIM insurance is to place "an injured party having uninsured motorist coverage in the same position as if the uninsured motorist

had been insured." *Calderon*, ¶ 11 (quoting *Barnett v. Am. Family Mut. Ins. Co.*, 843 P.2d 1302, 1308 (Colo. 1993) (collecting cases); *see State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 184 (Colo. 2004) ("Insured motorists have the right to recover compensation for loss caused by an uninsured motorist in the same manner that recovery would be permitted for a loss due to an insured motorist."). However, we conclude that the purpose of UIM insurance was served here.

¶ 16     The amount of damages resulting from an injury to an insured motorist is an issue of fact, to be negotiated by the parties or resolved by a fact finder. In *Calderon*, the issue was resolved by a jury, and the trial court, applying the terms of Calderon's insurance policy, reduced the jury award by $5000 to set off the MedPay benefits the plaintiff had already received. The supreme court held that policy provisions allowing such setoffs effectively penalize the plaintiff for being injured by an uninsured motorist. *Calderon*, ¶ 11. Therefore, the policy provision that resulted in the setoff in *Calderon* violated section 10-4-609(1)(c). *Id.* at ¶ 16.

¶ 17     Here, however, Arline negotiated her damages benefits and agreed that the $27,000 UIM benefit amount paid compensated her

7

sufficiently to warrant releasing American from any further claims. The present settlement agreement does not concern the amount of UM/UIM coverage available on her claim, but rather the amount of money she was willing to accept to release her claim. *See Archuleta v. USAA Cas. Ins. Co.*, Civ. A. No. 17-cv-00191-RBJ, 2017 WL 3157947 at *1 (D. Colo. Jul. 25, 2017).

¶ 18 Arline now argues, for the first time on appeal, that she was not compensated in the same manner as if she had been injured by a fully insured motorist. But she does not allege facts to support this argument. She alleges only that she did not receive "what she was entitled to" because of the setoff provision in her UM/UIM policy.

¶ 19 Moreover, Colorado public policy favors the settlement of disputes when the settlement is fairly reached. *Davis v. Flatiron Materials Co.*, 182 Colo. 65, 71, 511 P.2d 28, 32 (1973). If releases and settlements could be "lightly ignored," insureds and insurers would be discouraged from settling claims. *Id.* at 71-72, 511 P.2d at 32. Although Arline argues for the first time in her appeal that she was "forced" to sign the release, she alleges no facts to support this argument either here or in the district court. The Agreement

itself states that the sum paid was "agreed to as a compromise." Thus, we cannot conclude that the settlement was unfairly reached.

¶ 20    Second, we are not persuaded that the Agreement is prohibited by statute. Though the supreme court held that section 10-4-609(1)(c) prohibits policy provisions allowing a setoff from any other coverage, it did not hold that the statute extended to settlement agreements. *See Calderon,* ¶ 16. We perceive no indication that, in enacting section 10-4-609, the General Assembly sought to regulate settlement negotiations between an insured and her insurer.

¶ 21    Accordingly, we conclude that the Agreement is enforceable. Our conclusion is consistent with that of three recent federal district court cases resolving this issue. *See Mischek v. State Farm Mut. Auto. Ins. Co.,* Civ. A. Nos. 16-cv-03208-PAB-MLC, 17-cv-00041-PAB-MLC, 2018 WL 1569754, at *6 (D. Colo. Mar. 30, 2018) (granting summary judgment based on accord and satisfaction of UIM claims; "[b]ecause plaintiffs were aware at the time of settlement that [insurer] had reduced its initial settlement offers by the amount of MedPay benefits previously remitted, plaintiffs are not permitted to reopen their claims merely because there has been

9

a favorable development in the law"); *Zevallos v. Allstate Prop. & Cas. Co.*, Civ. No. 17-cv-00189-RM-CBS, 2017 WL 3242231, at *6 (D. Colo. July 28, 2017) (recommending dismissal of the plaintiff's claims seeking additional UM/UIM benefits because the UM/UIM settlement agreement between the plaintiff and insurer is enforceable and a bar to her claims); *Archuleta*, 2017 WL 3157947, at *1.[1]

¶ 22    We are not persuaded to the contrary by Arline's reliance on *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo. 1989).  In *Kral*, the supreme court held that a release-trust agreement executed pursuant to a subrogation provision in an insurance contract was enforceable only to the extent that it did not impair the insured's ability to be made whole.  *Id.* at 763.  *Kral* analyzed the enforceability of a term from the release agreement itself.  But Arline does not assert that any term of her Agreement is prohibited by statute or public policy; she argues for voiding the

---

[1] At oral argument, Arline's counsel appeared to suggest that a footnote in the *Archuleta* opinion might mandate a different result here.  *See Archuleta v. USAA Cas. Ins. Co.*, Civ. A. No. 17-cv-00191-RBJ, 2017 WL 3157947, at *2 n.2 (D. Colo. Jul. 25, 2017).  We disagree, because even if the footnote governed settlement agreements reached after *Calderon* was decided, Arline settled her claim with American one year before *Calderon*.

Agreement based on the calculations underlying American's net settlement payment. And she does not allege that she was not made whole or that she would have received more compensation if the motorist who caused her injury had been sufficiently insured. *Kral* does not hold that insured parties are required to accept nothing less than full compensation for their losses.

¶ 23 Because Arline signed a valid release agreement which is not void as against public policy or prohibited by statute, the district court properly dismissed her claim.[2] *See Ireland,* 36 Colo. App. at 220-21, 539 P.2d at 1359; *see also Fort Collins-Loveland Water Dist. v. City of Fort Collins,* 174 Colo. 79, 84-85, 482 P.2d 986, 989 (1971) (holding that when a complaint does not state a claim upon which relief can be granted, the court has no subject matter jurisdiction and could grant a motion to dismiss on either ground).

## V. Conclusion

The judgment is affirmed.

JUDGE WEBB and JUDGE FOX concur.

---

[2] We decline to address the retroactivity issue raised for the first time at oral argument.