Edward T. JOYCE, Plaintiff,

v.

**RITCHIE TOWER PROPERTIES et al., Defendants.**

**No. 74 C 116.**

United States District Court,
N. D. Illinois, E. D.

April 14, 1976.

James P. Chapman, Richard J. Rappaport and Mary Anne Spellman, Chicago, Ill., for plaintiff.

Rodney D. Joslin and Robert A. Spanner, Jenner & Block, Chicago, Ill., for defendants.

## DECISION ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

McMILLEN, District Judge.

Defendants have filed a motion for summary judgment on Counts I, II and V of the Amended Complaint, supported by various sworn and unsworn documents which are attached to their memorandum. Plaintiff has also filed various documents attached to his memorandum. The question raised by the motion, whether any genuine issue of material fact exists, in turn depends upon a question of law. That question is whether the sale of a condominium unit to be occupied by the plaintiff as his residence constitutes the sale of a "security" within the definition of the Federal securities acts.

The definitions are substantially the same, as follows (15 U.S.C. § 77b(1) and § 78c(a)(10)):

. . . any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or anticipation in, temporary or interim certificate for, receipt for, guarantee of, or

warrant or right to subscribe to or purchase, any of the foregoing.

The document which the plaintiff alleges to be a security in this case is attached as Exhibit A to his Complaint and is referred to in a rider as a Condominium Purchase Agreement. It constitutes an agreement to purchase an apartment in a certain building in Chicago, together with an interest in the "common elements" of the development, at a certain price and upon other terms and conditions spelled out in the contract. Since plaintiff alleges himself to be an owner of an apartment in the condominium building, we assume that the contract has been executed.

█ All of the "securities" listed in the foregoing definition are sold and owned as instruments with value, but Exhibit A has no remaining value except as a basis for a breach of contract. Furthermore, we have difficulty in fitting it into any of the terms in the definition of a security quoted above. Plaintiff admittedly intended to use the apartment as his residence but also alleges that he expected to realize "income" from the various concessions which were to be located in the building and expected that the units would increase in value over a period of time. Therefore, he alleges that the purchase agreement (not the deed) constitutes a security for which he should have received a prospectus and that it was not properly registered under the Federal statutes. In our opinion, this stretches the definition of a security beyond that intended to be covered by either of the statutes cited above and would tend to require the S.E.C. and this court to act as watchdogs over most buy-and-sell agreements, not merely those involving condominiums.

The leading case by which the Supreme Court attempted to define the term "investment contract" is, of course, *Securities Exchange Commission v. W. J. Howey Co. et al.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The key portion of the definition which appears at page 299, 66 S.Ct. at page 1103, of the decision is an investment in shares of a common enterprise wherein the investor is "led to expect profits solely from the efforts of the promoter or a third party . . .". Neither shares nor the expectation of "profits" nor the sole reliance on the efforts of third parties are involved in Counts I and II of the complaint at bar.

The most recent case in this area is *United Housing Foundation Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) which held that shares in a co-operative housing project are not "securities" under the Federal acts. The principal distinction between that case and this one is that the residents in *Forman* did not expect to receive any increased value on their investment, because their housing development was a state subsidized, not-for-profit development where the purchasers were required to offer their stock at the original selling price of $25 per share in order to sell. Therefore, the hope of a capital gain was precluded in that case.

However, the other elements of "profit" relied upon by the plaintiff in the case at bar were rejected by the Supreme Court. It held that the payment of interest, despite its deductibility for tax purposes, did not constitute income or profit and did not result from the managerial efforts of others. 421 U.S. at p. 855 and fn. 20, 95 S.Ct. 2051. Furthermore, the reduction of monthly rental charges by income received from concessions was held not to constitute profit in the sense intended by *Howey.* 421 U.S. at 856–7, 95 S.Ct. 2051. Thus the only real distinction between *Forman* and the case at bar is the possibility of an appreciation of capital.

It is no doubt possible that plaintiff hoped to realize an increment in the value of his condominium, if he decided to sell. Any purchaser of any real estate in today's inflationary market hopes to do so. An expectation of "profit" is not the motive when one's home is involved, however, and, more importantly, the gain does not come solely from the efforts of third persons. Ritchie Tower is not an isolated development which will increase in value solely because of the efforts of the promoters but is located in the middle of the City of

Chicago, an area which will increase or decrease in value because of many factors beyond the efforts of any of the parties herein. The owner of residential property is himself primarily responsible for maintaining its value, and of course such forces as inflation and general improvement of the surrounding areas are not due solely to the efforts of the seller.

Some condominiums, such as those at ski resorts or tropical islands, are purchased for investments, no doubt often for a profit motive, but a residence which is occupied by the owner exclusively and is not rented out in accordance with a rental arrangement or rental pool arrangement is not the type of condominium considered by the S.E.C. to be covered by the Securities Acts even before *Forman.* See Release No. 33–5347, 38 Fed. Reg. 1735 (Jan. 18, 1973). In *Forman,* the Supreme Court said at 421 U.S. p. 852 and 858, 95 S.Ct. at 2060 and 2063.

> . . . when a purchaser is motivated by a desire to use or consume the item purchased—"to occupy the land or to develop it themselves," as the *Howey* court put it . . . —the securities laws do not apply.
>
> \* \* \* \* \* \*
>
> . . . What distinguishes a security transaction—and what is absent here—is an investment where one parts with his money in the hope of receiving profits from the efforts of others, and not where he purchases a commodity for personal consumption or living quarters for personal use.

Count II alleges a violation of S.E.C. Rule 10b–5. If a "security" is not involved, then that Rule has no applicability. After briefing was concluded in this case, the Supreme Court decided *Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (1976). That decision would probably not cause dismissal of Count II wherein plaintiff alleges that defendants made "affirmative misrepresentations and intentional failures to disclose material facts" (Count II, par. 29). Under such cases as *Burns v. Paddock,* 503 F.2d 18 (7th Cir. 1974) we would hesitate to dismiss

Count II despite its rather vague allegations of *scienter,* but we do not base our decision on this ground. We will dismiss Count II for the same reason as Count I, failure to allege a security.

■ Count V (numbered Count IV in the Amended Complaint) seeks recovery of damages under various sections of the antitrust laws in substance Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2). This count is based primarily upon the allegation that the condominium units were sold only on condition that they be managed by the defendant real estate management firm, a partnership. This firm allegedly acted both as sales agent and manager of the building complex. Its partners were also some of the original developers of the complex, although the exact relationship between the developer and the management firm is not spelled out in the complaint. In any event, defendants' motion is based on affidavits showing their lack of economic power in the relevant market of selling or leasing condominium residences in Chicago, and plaintiff has not disputed the defendants' affidavits. This lack of power precludes a *per se* violation of § 1 of the Sherman Act in the form of the alleged tying arrangement between the sale of condominiums and their management agents. *Fortner Enterprises v. United States Steel,* 394 U.S. 495, 499–504, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

On the other hand, pars. 61 and 62 of the Amended Complaint could be construed to allege that defendants possess requisite economic power in the relevant market of management services. If such services were tied to the sale of condominium units, a violation of § 1 of the Sherman Act could perhaps be proved. See *Burns v. Paddock,* supra p. 6. The plaintiff has not argued this alternative in its memorandum and we will assume that the Amended Complaint does not cover it unless plaintiff files a more specific complaint to specify which product allegedly is tied to which by which defendants and in what relevant market.

■ Plaintiff also alleges a "conspiracy" in restraint of trade in par. 61 of his

Amended Complaint. This states a claim under § 1 of the Sherman Act, and therefore defendants' motion for summary judgment must fail on this point. Since no allegations have been made concerning monopolization, attempt to monopolize or combination or conspiracy to monopolize, however, summary judgment for defendants is appropriate with respect to § 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).

The effect of the alleged conspiracy on interstate commerce cannot be decided on a motion for summary judgment. Since neither side has filed affidavits on this issue, the allegations of the Amended Complaint are unimpaired. The substantiality of the effect on interstate commerce is a question of fact which is not foreclosed merely because the dollar amount involved in the management contract between the plaintiff and the defendants is relatively minor. This and other issues involved in the alleged conspiracy to restrain trade apparently must await trial, under *Fortner Enterprises. A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Association*, 484 F.2d 751, 759 (7th Cir. 1973), cert. den. 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

We might point out that our prior decisions denying class status for the plaintiff were not necessarily definitive, particularly with respect to Count V. It might well be that a proper class could be certified for this remaining count, if the circumstances referred to in our previous decisions on the class action issue have become modified. However, since this case should be ready for trial, any attempt at a new class certification should not be delayed.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that defendants' motion for summary judgment on Counts I and II is granted and judgment is entered thereon in their behalf. Their motion for summary judgment on Count V (numbered IV on the face of the Amended Complaint) is granted as to the allegations involving § 2 of the Sherman Act and denied as to a claim under § 1 of the Sherman Act.

When the pre-trial compliance has been concluded, this case will be added to those awaiting trial.