## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Erika Kuhn et al.

v.

West Alexandria
Properties, Inc., et al.

March 13, 1980

Case No. (Law) 5416

By JUDGE ALBERT H. GRENADIER

The plaintiffs have filed this action at law individually, and as members of a class on behalf of all unit

owners similarly situated of Watergate at Landmark Condominium, against the declarant and developer, West Alexandria Properties, Inc. (West Alexandria), the builder, Majestic Builders Corp. (Majestic), the condominium management company, Polinger Company, the architects, Holle and Graff, and several individuals, who are or were officers and/or directors of the various corporations or of the condominium association.

The extremely detailed motion for judgment is seventy-five pages in length and contains seven different counts or causes of action against various defendants. Each of the counts seeks compensatory and punitive damages as well as other relief.

Count One, in general terms, alleges that the defendant West Alexandria breached its contract with the plaintiffs, breached its warranty under the Virginia Condominium Act, and that it and several of the individual defendants breached certain fiduciary duties owed to the plaintiffs.

Count Two alleges breach of express and implied warranties by West Alexandria and its officers and directors; breach of implied warranties by West Alexandria, its officers and directors; by Majestic, its officers and directors, by Holle and Graff, and by various individual defendants; breach of fiduciary duties by various defendants; and violations of the Virginia Condominium Act.

Count Three re-alleges Counts One and Two and makes various claims against West Alexandria, Majestic, Polinger Company and various individuals for violations of the disclosure and other requirements of the Virginia Condominium Act.

Count Four alleges violations of the Virginia Condominium Act in connection with disclosures, breach of fiduciary duties, breach of a management contract, and violations of the Sherman Act and the Virginia Antitrust Act, and requests a declaratory judgment and other relief against West Alexandria, Polinger Company, Majestic and several individual defendants.

Count Five alleges negligence of the builder, developer and architect and other individual defendants with respect to the construction, design and repair of the condominium.

Count Six alleges injury to the plaintiff's real property as a result of the breaches of contract, violations

of the Virginia Condominium Act, negligence and wrongful acts perpetrated by various of the defendants.

Count Seven alleges fraud, misrepresentation and violation of the Virginia Condominium Act.

To the motion for judgment, the individual defendants Polinger, Glenn, Zupnik, Zuckerman and Sanker filed motions to quash service of process and to dismiss for lack of jurisdiction. The defendants Majestic, Zupnik, Sanker, Holle, Graff, West Alexandria, Roberts, Elsen, Foa, Kirby, Cecchi, Ward and Polinger Company filed demurrers to the motion for judgment. The Court has reviewed the memoranda filed by the parties in connection with all of the motions and demurrers.

### Service of Process

The Court will first consider the motions to quash service of process and to dismiss filed by the individual defendants Glenn, Polinger, Zupnik, Zuckerman and Sanker.

The defendant Glenn contends that he is a resident of Virginia and that he cannot be served with process by serving the Secretary of the Commonwealth under the provisions of § 8.01-328.1 et seq. of the Code of Virginia. Although this section is applicable to residents as well as non-residents (§ 8.01-328), when service of process is to be made on the Secretary, the plaintiffs are required to file an affidavit stating that the person to be served is either a non-resident or that after exercising due diligence, he has been unable to locate the person to be served. In either event, the affidavit must set forth the last-known address of the person to be served (Section 8.01-329). If the defendant Glenn is a resident of Virginia and the plaintiffs' affidavit does not state that they have been unable to locate him, he can be served only under the provisions of § 8.01-296 of the Code of Virginia. A party who is a resident of this state cannot be served under the Long Arm Statute merely because his place of employment is out of the state. The Court is satisfied that with respect to the defendant Glenn, the affidavit does not comply with the requirements of § 8.01-329, and the service is defective. But even if the affidavit is sufficient, the service is invalid for reasons hereinafter set forth.

Personal jurisdiction over the individual defendants who are non-residents of the State of Virginia or who cannot be located in this state can be exercised only pursuant to the provisions of § 8.01-328.1 et seq. of the Code of Virginia. The allegations made against these individual defendants found in various places in the motion for judgment are:

1. Fraud and misrepresentation by the declarant for which they are also alleged to be responsible.

2. Violations and breaches of the Virginia Condominium Act.

3. Breaches of implied warranty.

4. Breaches of the management contract.

5. Negligent construction resulting in damage to property.

These allegations could, if properly pleaded, give rise to the exercise of personal jurisdiction under the statutory umbrella of transacting business in this state (as stated in the plaintiffs' affidavit) or causing tortious injury by an act or omission in this state. However, naked allegations of fraud and misrepresentation, negligence or contractual breaches, express or implied, are not sufficient. There must be a duty before there can be a cause of action for a breach of that duty. The plaintiffs must allege such facts that will permit a finding that these individual defendants, as individuals, and not as officers or agents of a corporation, were guilty of fraud or misrepresentation; or that they had an obligation to the plaintiffs under the Virginia Condominium Act; or that they expressly or impliedly warranted the construction of the project; or that they had a management contract with the plaintiffs or the declarant; or that they owed some duty to the plaintiffs as architect, builder or contractor.

The factual basis for the assertion and existence of jurisdiction over the person of a non-resident defendant depends upon the factual allegations in the complaint before the Court. *First National Bank of Chicago v. Screen Gems, Inc.*, 40 Ill. App. 3d 427, 352 N.E.2d 285 (1976). The plaintiff has the burden to plead sufficient facts to justify the application of the Long Arm Statute in order to withstand a legal challenge to such service. *Chase Manhattan Bank v. Banco Del Atlantica*, 343 So. 2d

936 (Fla. 1977); *Hankins v. Somers*, 39 N.C. App. 617, 251 S.E.2d 640 (1977).

In a civil suit, acquisition of jurisdiction ordinarily depends on the *facts* existing at the time of the commencement *of the suit as they appear from the complaint or other original pleading of the plaintiff.* 20 Am. Jur. 2d, *Courts*, § 142 (emphasis added). The plaintiffs have, in their motion for judgment, pleaded nothing more than a number of bare legal conclusions, totally unsupported by well-pleaded factual allegations.

The motion for judgment, although voluminous and broad in scope, does not, in the opinion of the Court, allege sufficient facts to show the existence of any legal duty owed to the plaintiffs by these five individual defendants for which a breach thereof will permit service of process upon them under the Virginia Long Arm Statute.

There are no facts pleaded from which the Court can find that these defendants transacted any business in this state or performed any other relevant act in this state other than in their capacity as corporate officers or agents. There are likewise no facts pleaded from which the Court can find that these defendants, as individuals, caused tortious injury to the plaintiffs. Under § 8.01-328.1 of the Code of Virginia, service of process is authorized only when there exists one or more of the causes of action enumerated therein. Violations of the Virginia Condominium Act are not embraced in the statute. Therefore, the Long Arm Statute does not authorize service of process for such violations.

In addition to alleging the jurisdiction facts, the plaintiff also has the burden of *proving* jurisdictional facts. *Haynes v. James H. Carr, Inc.*, 427 F.2d 700 (4th Cir. 1970) *cert. denied*, 400 U.S. 942, 91 S. Ct. 238, 27 L. Ed. 2d 245 (1970). If the Court were to accept the premise that allegations of fraud and misrepresentation, or negligence, or breach of contract, which are merely conclusions of law, are sufficient to trigger the operation of the Long Arm Statute without requiring the plaintiffs to state the facts that bring them under the statute, every case would have to be tried on its merits before the question of the propriety of the service of process could be determined. The Court cannot believe the Legislature intended this exercise when it enacted the statute.

Accordingly, the motions to quash process filed by the defendants Polinger, Zupnik, Glenn, Zuckerman and Sanker are granted, the process against them quashed and held to be void and of no effect, and the motion for judgment dismissed as to them, without prejudice.

### Class Action

The demurrers filed by the defendants deal with a great number of issues, but the primary issue is whether the individual plaintiffs in this case have the standing or the right to maintain a class action against the defendants on behalf of the unit owners, and if they do, the scope of such class action.

In equity it is the general rule that all persons who are materially interested in the subject matter of a suit and who will be affected by the proceedings should be made parties to the suit, either as plaintiffs or defendants, however numerous they may be. An exception to the general rule is that the Court may permit a suit to be brought by one person on behalf of himself and all other persons having a like interest as the plaintiff when such persons are very numerous or cannot be easily discovered or ascertained. Creditors' suits and stockholders' suits are examples of such "class suits." Whether a particular suit of such nature is entertained is, in the first instance, a matter within the sound judicial discretion of the trial chancellor. *See* 14A Michie's Jurisprudence, *Parties*, § 3, 8.

Generally, unless extended by statute, the rule regarding class actions has no application to actions at law. *See* 59 Am. Jur. 2d *Parties*, § 49. The Court has been unable to find any Virginia case law, rule of court or provision in Title 8.01 of the Virginia Code which would authorize the maintenance of a class action at law. Therefore, if the plaintiffs have the right to maintain a class action in this case, that right was created under the provisions of the Virginia Condominium Act in § 55-79.53 of the Code of Virginia. That section provides, in pertinent part:

The declarant, every unit owner, and all those entitled to occupy a unit shall comply with

all lawful provisions of this chapter and all provisions of the condominium instruments. Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the unit owners association, or by its executive organ or any managing agent on behalf of such association, or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action.

It is clear to the Court that under the provisions of the foregoing section, only the unit owners "in a proper case" may bring a class action for violations of the Virginia Condominium Act or the condominium instruments by the declarant or any other unit owner or unit occupant. The scope of such class action, however, must be restricted to lack of compliance with the Condominium Act or the condominium instruments. The Court cannot expand the plain language of the statute to include other unrelated causes of action.

The inclusion in the statute of only these causes of action is a clear indication that all other causes of action were intended to be excluded. Although the maxim of *expressio unius est exclusio alterius* is not a rule of law, it is a valuable aid to statutory construction. *See* 17 Michie's Jurisprudence 330, *Statutes*, § 45; *Tate v. Ogg*, 170 Va. 95 (1938). It should also be noted that the statute authorizing class actions is in derogation of common law. As such, it should be strictly construed in the light of the purposes for which it was enacted and should not be enlarged in its operation by construction beyond its express terms. *See Sydnor Pump and Well Company v. Taylor*, 201 Va. 311 (1959); *C & O Ry. v. Kinzer*, 206 Va. 175 (1965). And this is true even if the statute is remedial in nature. *Sellers v. M. J. Bles Construction Company*, 198 Va. 49 (1956).

Nor do the provisions of § 55-79.80:1 of the Virginia Code expand the authority of the Court to permit the maintenance of a class action. This Code section was not, in the judgment of the Court, enacted for that purpose. This section is intended only to make it clear that a

unit owner has the right to sue the association in tort, although he, as a member of the association, may be the ultimate obligor because of his obligation to pay condominium fees.

Therefore, the Court concludes that all causes of action asserted by the plaintiffs that are not related to lack of compliance with the Virginia Condominium Act or the condominium documents are not proper subjects of a class action. This means that the antitrust violations, breach of fiduciary duties, and breach of the management contract cannot be the subject of a class action by these plaintiffs. Nor can claims of fraud or misrepresentation be included unless they directly relate to lack of compliance with the Virginia Condominium Act or the condominium documents. This is not to say that the plaintiffs may not have a right to individually assert other causes of action, but not as representatives of a class in a class action suit.

The plaintiffs have, in their motion for judgment, claimed two basic violations of the Act:

1. Failure of accurate disclosure under §§ 55-79.54 and 55-79.90 of the Virginia Code.

2. Breach of warranty under § 55-79.79 of the Code of Virginia.

Allegations with respect to such non-compliance appear in every single count of the motion for judgment, but it is difficult, if not impossible, to isolate them from the allegations of breach of implied warranties, breach of fiduciary duties, breach of contract, negligence, fraud and antitrust violations. Trying to sort out which defendants are alleged to have perpetrated which wrongs is practically impossible, particularly because several of the counts re-allege paragraphs in previous counts.

The question of the existence of implied warranties must first be disposed of. Under the law in Virginia, there are no implied warranties of habitability or fitness in the sale of a residence. *Bruce Farms, Inc. v. Coupe*, 219 Va. 287 (1978). In response to the *Bruce Farms* decision, the Virginia Legislature enacted § 55-70.1, which legislatively provided such warranties. Condominium units, however, were expressly excluded from coverage under this section. In Virginia there can be no recovery for breach of implied warranties in the sale of a condominium unit. § 55-79.79(b)

of the Code of Virginia gives the only warranty a condominium unit purchaser receives.

If we examine the motion for judgment within the framework of § 55-79.53 of the Virginia Code, it becomes obvious that the declarant is the only one of the defendants that can be the target of a class action suit brought by the unit owner. The declarant is the only one who is required to file a declaration and make disclosures under the Condominium Act. The declarant is the only one who is required to give a two-year warranty against structural defects. And in the context of this case, it is only lack of compliance with the Act or with the condominium documents by the declarant which authorizes the maintenance of a class action.

Therefore, the Court concludes that if the plaintiffs are entitled to bring a class action suit, such suit can be maintained only against the declarant and only for such cause or causes of action that arise out of the declarant's lack of compliance with the Virginia Condominium Act or the condominium instruments.

Having proscribed the nature and scope of the possible class action, the next inquiry that must be addressed is whether the plaintiffs have standing to bring such an action. The defendants argue that the plaintiffs, who are individual unit owners, have no standing to maintain a class action for damages with respect to the common elements and that the cause of action, if it exists, belongs exclusively to the unit owners' association. The defendants cite as authority therefor § 55-79.79 of the Code of Virginia and several cases including *Ireland v. Wynkoop*, 539 P.2d 1349 (Colo. App. 1975); *The Florida Bar*, 353 So. 2d 95, 97 (Fla. 1977); *Chimney Hill Owners Association, Inc. v. Antignani*, 392 A.2d 423 (Vt. 1978); *Patrician Towers, Inc. v. Fairchild*, 513 F.2d 216, 221 (4th Cir. 1975); and *Hur v. Morgan Enterprises, Inc.*, 325 So. 2d 446 (1976).

Section 55-79.79 of the Code of Virginia provides in pertinent part as follows:

> (a) Except to the extent otherwise provided by the condominium instruments, all powers and responsibilities with regard to maintenance, repair, renovation, restoration and replacement

of the condominium shall belong (1) to the unit owners' association in the case of the common elements, and (2) to the individual unit owners in the case of any unit or any part thereof.

The Court has reviewed the authorities cited by the defendants and is not persuaded that the causes of action authorized as class actions under § 55-79.53 belong to the unit owners' association. In the first place, the Court does not believe that § 55-79.79(a) gives the unit owners' association a cause of action against the declarant for breach of warranty under § 55-79.79(b) with respect to the common elements. This Code section does nothing more than assign responsibility for the maintenance and upkeep of the common elements to the association and of the individual units to the unit owners thereof. Powers and responsibilities delegated to the unit owners' association in this section do not extend to the basic causes of action asserted by the plaintiffs in this case. The courts have usually taken the view that in the absence of a specific statutory provision to the contrary, a condominium association has no standing to sue in a representative capacity, at least with respect to property rights, which technically are in the unit owners who are the real parties in interest. Section 55-79.79 of the Virginia Code is certainly not such a statutory provision. The statute grants to the association only the power and responsibility to maintain, repair, renovate, restore and replace the common elements of the condominium. Nowhere in this section or in § 55-79.53 is authority granted to the association to sue the declarant for non-compliance with the Act or to bring a class action.

It seems to the Court that the better view is that the individual unit owners, who are the real parties in interest, have the sole right, in a "proper case," to bring a class action suit for damages against the declarant/developer for:

1. Structural defects in the common elements and in their individual units as such defects are defined in § 55-79.79 of the Code of Virginia; and

2. Lack of compliance with other sections of the Virginia Condominium Act or with the condominium instruments. *See Friendly Village Community Association, Inc.*

*v. Silva & Hill Construction Co.*, 31 Cal. App. 3d 220, 107 Cal. Rptr. 123, 69 A.L.R.3d 1142; *Wittington Condominium Apartments, Inc. v. Braemar Corp.*, 313 So. 2d 463 (Fla. App. 1975); *Rubenstein v. Burleigh House, Inc.*, 305 So. 2d 311 (Fla. App. 1975); *Quinn v. Beach Associates*, 249 S.E.2d 734 (S.C. 1978).

The defendants argue further in their demurrers that this is not a "proper case" which can be brought as a class action under the provisions of § 55-79.53 of the Code of Virginia. The question of what constitutes a "proper case" deals not only with the nature of the matters complained of, which subject has already been discussed, but with the propriety of the form of the action itself. Unfortunately, there are no procedural rules or case decisions in Virginia dealing with the maintenance of class actions at law. The Federal Rules of Civil Procedure provide some direction in this regard.

Rule 23 of the Federal Rules of Civil Procedure sets forth the criteria for maintaining a class action suit in the federal courts. Rule 23(a) contains four requirements, all of which must be met before the members of a class may sue as representatives of the class. They are:

1. The class is so numerous that joinder of all members is impractical;

2. There are questions of law and fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

Once the requirements of Rule 23(a) are satisfied, the plaintiff in a class action suit must, in addition, meet the requirements of one of the following standards set forth in Rule 23(b):

1. That prosecution of separate actions would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for the other party, or make disposition of the interests of other class members not parties in the case, or substantially impair or impede their ability to protect their interests; or

2. That the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive or declaratory relief appropriate with respect to the class as a whole; or

3. That common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968); *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir. 1976).

Rule 23(c) requires the court to determine "as soon as practicable after the commencement of an action" whether it may be maintained as a class action. The trial court has broad discretion in deciding whether to allow the maintenance of a class action and may take into consideration matters not expressly dealt with in the rule. *Montgomery v. Rumsfeld*, 572 F.2d 250 (9th Cir. 1978); *Roman v. E.S.B., Inc.*, 550 F.2d 1343 (4th Cir. 1976). If the trial judge, in determining whether to allow the suit to proceed as a class action, applies the correct criteria to the facts of the case, his decision should be considered to be within his discretion. *Peterson v. Oklahoma City Housing Authority*, 545 F.2d 1270 (10th Cir. 1976).

The issue of maintainability has given rise to a great deal of litigation. Some federal courts have allowed evidentiary hearings on the issue of maintainability. In *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D. N.Y. 1968), the court stated that the plaintiffs could only proceed with the class action if they established in a preliminary hearing that "there is a substantial possibility that they will prevail on the merits." The court justified this ruling because of the expense of the notices and the adverse effect of the attendant publicity. However, in *Mersey v. First Republic Corporation of America*, 43 F.R.D. 465 (S.D. N.Y. 1968), the court refused to hold such a hearing saying that it would deprive the plaintiff of his right to a jury trial and turn Rule 23 into a cumbersome procedure. On balance, the Court feels that the rule that such a hearing should be held only in exceptional cases, represents the better resolution of this conflict. *See* Wright and Miller, *Federal Practice and Procedure*,

sect. 1785. But the proponent of class certification still has the burden of establishing the right to such certification under Rule 23. *Windham v. American Brands, Inc.,* 565 F.2d 59, 64 (4th Cir. 1977), *cert. denied,* 435 U.S. 968 (1978).

The plaintiffs in this case must submit facts from which the Court can determine the membership of the class which the plaintiffs purportedly represent, the adequacy of their representation of the class, the possible subclasses, and the type of notice that may be required. In the absence of such facts, it is impractical for the Court to make the determination as to whether the case can be maintained as a class action. *Kelly v. Wyman,* 294 F. Supp. 887 (S.D. N.Y. 1968).

In the first place, it should be apparent that there can be no class action for breach of warranty claims for structural defects in the individual units. Every unit owner could conceivably have a claim for a different defect. The amounts of the claims would be different. Each unit owner would be subject to a different warranty period. There are no common questions of law and fact. The claims of these plaintiffs are not necessarily typical of the class. Common questions of law and fact clearly do not predominate over questions affecting only individual members. Claims in this category simply do not meet the requirements of Rule 23.

Claims alleging breach of warranty for structural defects in the common elements create similar problems. The unit owners within the different buildings may have different rights with respect to the common elements. Each building is subject to a different warranty period. Some of the common elements are for the use and benefit of all of the unit owners and some are not. The warranty period has expired as to some common element improvements and possibly not with others. There are more differences than there are elements of commonality. Not even creating a sub-class for each building will solve the problem.

Likewise, the claims alleging lack of compliance with the Virginia Condominium Act create a host of problems when considered in the framework of a class action. These causes of action sound in fraud and deceit and breach of fiduciary duty. If there were, in fact, misrepresentations, failures in making disclosure or breaches of fiducia-

ry duties, did they exist in all 1200 sales? Did all 1200 purchasers rely on such misrepresentations and was such reliance to their detriment? Were all purchasers similarly affected and damaged to the same extent? And when did the various causes of action accrue? The Court perceives that there may be as many different factual and legal situations as there are purchasers. There is no common denominator that will allow a class action suit for such causes of action. There is no way such actions can meet the requirements of Rule 23. Because of the problems inherent in such actions, it is generally held that a count which seeks to assert a cause of action for fraud and deceit is inappropriate for a class action. *Osceola Groves v. Wiley,* 78 So. 2d 700 (Fla. 1955); *Breslerman v. Dorten, Inc.,* 320 So. 2d 442 (Fla. 1975); *Hendler v. Rogers House Condominium, Inc.,* 234 So. 2d 128 (Fla. 1970).

There is no reasonable way that the Court can determine from the motion for judgment whether the plaintiffs are proper members of a class, and if so, for what claim or claims. How can the Court find that there are common questions of law or fact which predominate over questions affecting only individual members? And how can the Court find that the claims of the plaintiffs are typical of the class they purport to represent? The plaintiffs simply have not met their burden of showing that they are entitled to maintain this suit as a class action.

For the foregoing reasons, the Court holds that this is not a "proper case" for a class action authorized by § 55-79.53 of the Code of Virginia.

The finding that a class action does not lie does not completely dispose of the demurrers. If a suit does not meet the requirements of the rule relating to the maintenance of class actions, the individuals may still continue it on an individual basis. *Lumbermens Mut. Cas. Company v. Rhodes,* 403 F.2d 2 (10th Cir. 1968), *cert. denied,* 394 U.S. 965, 89 S. Ct. 1319, 22 L. Ed. 2d 567. Therefore, the demurrers should now be considered as they apply to the several causes of action advanced by the plaintiffs in their individual capacity.

The broad-based approach utilized by the plaintiffs in their motion for judgment makes it impossible for the Court to test the legal efficacy of each and every specific

allegation in every count. It is necessary, therefore, to extract from the motion for judgment the basic claims made by the plaintiffs to see whether they constitute viable causes of action. These claims are for:

1. Breach of contract, fraud and misrepresentation
2. Breach of express and implied warranties
3. Breach of fiduciary duties
4. Improper use or mismanagement of condominium funds
5. Negligence
6. Antitrust violations

The Court will attempt to address each of these causes of action as they relate to the demurrers filed by various of the defendants.

### Breach of Contract, Fraud and Misrepresentation

In Count I of the motion for judgment, the plaintiffs make several allegations to the effect that the declarant failed to deliver what was promised in the advertising materials, plans and specifications and public offering statements. Count VII makes additional allegations that the declarant made misrepresentations concerning the character and content of the condominium project. Defendant West Alexandria argues that the letters of approval of the various phases of the condominium project by the Virginia Real Estate Commission preclude the plaintiffs from pursuing their claims for such misrepresentation, failure of disclosure and failure to deliver what was promised. These approvals are probably relevant on the issue of whether the declarant has complied with the Virginia Condominium Act, but they are not binding upon the plaintiffs, nor are they conclusive in any way with respect to the allegations of breach of contract and fraud made in the motion for judgment.

Furthermore, the Court does not believe that the prior promises and undertakings were merged into the deed. The Court reaches this conclusion for two reasons. In the first place, prior promises and undertakings are merged into the deed only in the absence of fraud or mistake. *Bostic v. Amoco Oil Co.*, 553 F.2d 329 (4th Cir. 1977). The Court is well satisfied that the motion for judgment contains sufficient allegations of fraud which, if proven, would preclude such a merger into the deed. These allega-

tions not only relate to future promises but to existing conditions. The allegations of fraud and misrepresentation made by the plaintiffs transcend "dealer's talk" or "puffing," as these expressions are defined in the Virginia cases. Generally, it is true that mere general assertions in the form of puffing by a vendor of property cannot be relied upon by a purchaser. This rule is inapplicable, however, when the vendor transcends the limits of puffing and makes misrepresentations as statements of fact. *Henning v. Kyle*, 190 Va. 247 (1949). And if these allegations of factual misrepresentations are true, which the Court must assume in ruling on the demurrers, there can be no merger into the deed. Secondly, the nature of the condominium project itself is such that the developer may be required by his contract to furnish improvements for the benefit of a purchaser long after the deed to a purchaser is recorded. For instance, the condominium plans may show a park or a swimming pool to be completed in the future as a part of the common elements, or there may be representations as to the quality of the project. Does the declarant seriously contend that after the deed is recorded, the purchaser cannot complain if the improvements are never built or are not of a promised quality? The Court does not think that such a conclusion is logical. It is obvious that all of the parts of a condominium project cannot be completed at the same time and that the purchaser of a unit may be entitled to use a common element that is not yet completed when he takes a deed to his unit. The general rule that the fraud must relate to a present or pre-existing fact is likewise inappropriate when applied to an expandable condominium. Nor is the degree of proof required in a fraud case relevant on the issue of whether or not the plaintiff has alleged a good cause of action. The Court is of the opinion that the plaintiffs have stated a good cause of action against the declarant for breach of contract and fraud in Counts I and VII of the motion for judgment. Such cause of action does not, however, lie against any other defendant.

### Breach of Express and Implied Warranties

The Court has previously considered the question of implied warranties and has reached the conclusion that

in Virginia there are no implied warranties in the sale of a condominium residence. Likewise, the question of express warranties has also been discussed, with the Court concluding that the only express warranty that exists is that warranty specified in § 55-79.79 of the Code of Virginia. This warranty is a two-year warranty against structural defects and is binding only upon the declarant, West Alexandria. The architect and the builder have neither a common law nor statutory duty to impliedly or expressly warrant their work to third parties such as the plaintiffs in this case. The Court's research indicates that even where implied warranties exist on the part of the builder or architect, they run only to the person or entity with whom they contract.

### *Breach of Fiduciary Duty*

The plaintiffs have not alleged the breach of any fiduciary duty imposed by common law. Indeed, there is none. If any such duty exists, it is a creature of the Virginia Condominium Act. During the period of declarant control, the declarant, under § 55-79.74 of the Code of Virginia, as it existed prior to July 1, 1978, had the right to appoint a managing agent and the members of the board of directors of the unit owners' association. This board had the right to select and remove officers of the association. After the period of declarant control, the board of directors was elected by the unit owners' association and they, in turn, selected the officers. There was no mention of any fiduciary duty in the original statute.

Effective July 1, 1978, § 55-79.74 was amended to subject the declarant, or the managing agent appointed by him, or the members of the board of directors of the unit owners' association, to liability as fiduciaries of the unit owners for their acts or omissions during the period of declarant control. The statute does not prescribe any fiduciary duties incumbent upon any of the other defendants herein.

It is the opinion of the Court that the declarant's liability as a fiduciary existed only during that period of time that the declarant had the power and responsibility for conducting the affairs of the unit owners' association. Once the declarant appointed a managing agent or board

of directors of the association, the fiduciary duties were transferred to the declarant's appointees, for they then had the power and responsibility for conducting the affairs of the association. The fiduciary duties provided for in the statute are rightly imposed only upon those who are responsible at the time for conducting the affairs of the association. The use of the subjunctive in the statute strongly reinforces this view.

Consistent with the rules of statutory construction, the fiduciary duties which came into existence on July 1, 1978, applied only to the declarant, which was then conducting the affairs of the association, and extended from that date until September 30, 1978, when the period of declarant control expired. The Court is unable to determine from the motion for judgment whether the breaches claimed by the plaintiffs occurred within these dates. The allegations by the plaintiffs clearly exceed the extent of the declarant's responsibility, and to the extent that they do, they cannot be upheld on demurrer.

*Improper Use or Mismanagement of Condominium Funds*

The plaintiffs do not have a cause of action for improper use or mismanagement of the condominium funds. If there is a cause of action, it belongs to the unit owners' association and not to the individual unit owners. *Ireland v. Wynkoop, supra.* If it were otherwise, each unit owner would have the right to bring a suit every time the association expended funds. Such a right would be intolerable, as it would completely frustrate the ability of the association to act.

*Negligence*

The plaintiffs allege negligence on the part of the declarant, the builder and several of their officers and directors in connection with the construction of the condominium improvements. There is no such thing, however, as negligence in the abstract. Inherent in all negligence actions is the existence of a legal duty owed to the plaintiff and a breach of that duty by the defendant which proximately causes an injury to the plaintiff. *General Bronze Corp. v. Kostopulos,* 203 Va. 66 (1961); *Bartlett*

*v. Roberts Recapping, Inc.,* 207 Va. 789 (1967); *Semler v. Psychiatric Inst.,* 538 F.2d 121 (4th Cir. 1976), *cert. denied,* 429 U.S. 827, 97 S. Ct. 83, 50 L. Ed. 2d 90 (1976). Under modern pleading rules, the plaintiff may simply allege the existence of a duty and say that the defendant negligently violated that duty, proximately causing injury. Under Rule 3:16 of the Rules of Court, the plaintiff is no longer obligated to allege the facts with the same degree of certainty that was required in the case of *Clinchfield Coal Company v. Wheeler's Admr.,* 108 Va. 448 (1908). Although the plaintiffs have alleged that the defendants were negligent, they have not alleged facts giving rise to the existence of a legal duty or that a violation of that duty proximately caused the injuries complained of.

With the exception of the duty upon the declarant to provide the statutory warranty, the plaintiffs allege no legal duty whatsoever owed to them by the other defendants relating to the improvements constructed by them. The non-existence of a legal duty is fatal to a claim for negligence. And this also applies to the plaintiffs' cause of action for damage to real property, for such a claim is also a claim in tort for negligence.

### Antitrust Violations

The plaintiff alleges that the management contract between the declarant and the Polinger Company amounts to a "tie-in arrangement" and is violative of the Sherman Antitrust Act (15 U.S.C. §§ 1-7) and the Virginia Antitrust Act (§ 59.1-9.1, et seq. Va. Code). Under 15 U.S.C. 4, the federal courts have exclusive jurisdiction for suits brought for relief under the Sherman Antitrust Act. *Miller v. Granados,* 529 F.2d 393 (5th Cir. 1976). This Court does have authority, however, to act with respect to violations of the Virginia Antitrust Act. Under § 59.1-9.17 of the Virginia Code, the Virginia Antitrust Act must be applied and construed harmoniously with the Sherman Act.

The defendant Polinger contends that because § 55-79.74 of the Virginia Code specifically authorizes the declarant to enter into a management contract, such management contract may not be the subject of an antitrust violation by virtue of the provisions of § 59.1-9.4(b) of the Virginia

Code. The Court does not believe that such exemption is intended. The inquiry simply is whether there is a tying arrangement between the declarant and the management company which violates the Virginia Antitrust Act.

Tie-in agreements or tying arrangements by which sale of one commodity is conditioned on purchase of another are condemned under antitrust laws because they serve only to suppress competition. *Black v. Magnolia Liquor Company*, 355 U.S. 24, 78 S. Ct. 106, 2 L. Ed. 2d 5 (1957).

To establish a tying arrangement in violation of the Sherman Antitrust Act, it must be demonstrated that the scheme involves two distinct items and provides that one, the tying product, may not be obtained unless the other, the tied product, is also purchased, that the tying product possessed sufficient economic power appreciably to restrain competition in the tied product market, and that a not-insubstantial amount of commerce is affected by the arrangement. *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43 (9th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S. Ct. 1172, 1173, 31 L. Ed. 2d 232 (1972); *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307 (5th Cir. 1976). But not every business transaction which conditions the sale of one item on the purchase of another can be condemned as a "tying" arrangement or "monopolistic" practice to which serious legal risks should attach. *Broussard v. Sacony-Mobil Oil Company*, 350 F.2d 346 (5th Cir. 1965).

The characteristics of an illegal tying arrangement are:

1. Two separate and distinct products, the tying product and the tied product;

2. Sufficient economic power in the tying market to coerce the purchase of the tied product;

3. Involvement of a not insubstantial amount of interstate commerce in the tied market; and

4. Anticompetitive effects in the tied market.

*Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321 (5th Cir. 1974); *Sulmeyer v. Coca Cola Company*, 515 F.2d 835 (5th Cir. 1975).

It has also been held that the practices of certain savings and loan associations requiring their borrowers to pay fees to attorneys selected by them to prepare or check papers in connection with loans does not constitute

the sale of two products and is not violative of antitrust laws. *Forrest v. Capital Building and Loan Association*, 504 F.2d 891 (5th Cir. 1974), *cert. denied*, 421 U.S. 978, 95 S. Ct. 1980, 44 L. Ed. 2d 470 (1975). In the case of *Johnson v. Nationwide Industries, Inc.*, 450 F. Supp. 948 (N.D. Ill. 1978), the court held that a long-term garage lease was not a separate product which condominium purchasers were required to accept as a condition of the purchase of their real property but was only a limitation imposed on the estates they purchased. Accordingly, the court held that there was no illegal tying arrangement that violated antitrust laws.

In the case of *Joyce v. Ritchie Tower Properties*, 417 F. Supp. 53 (N.D. Ill. 1976), the same firm acted as sales agent for the condominium units and also managed the complex. The court held that the defendant's lack of economic power in the relevant market of selling or leasing condominium residences in the city precluded a violation of the Sherman Antitrust Act in the form of alleged tying arrangement between the sale of the condominiums and their management.

In the case at bar, the claim of an illegal tying arrangement is seriously flawed. In the first place, under the ruling in *Johnson v. Nationwide Industries, Inc., supra*, only one product is involved. Under the rationale of that case, the purchaser of a condominium unit buys the unit encumbered by the management contract but does not buy two separate and distinct products. Under § 55-79.74 of the Virginia Code, the term of the management contract between the declarant and the management company during the period of declarant control is restricted by law to two years. This provision was enacted as a safeguard against unconscionable exploitation by the declarant and/or the management company during the period of declarant control. When control passes to the unit owners' association, the association is free to contract management services. Under these circumstances, it is difficult to see how there can be an illegal tying arrangement.

Secondly, it is not alleged that: (1) the declarant or the management company wielded sufficient economic power to coerce purchasers of condominium units; or that (2) the sales of the condominium units involved substantial interstate commerce; or that (3) such sales restrained

competition in the condominium market in this area. If the actions of West Alexandria and Polinger created anti-competitive effects in either the condominium sales market or the condominium management field in this area, they are not readily apparent. Accordingly, the Court finds that the motion for judgment fails to state a cause of action cognizable by this Court for antitrust violations under either the Sherman Act or the Virginia Antitrust Act.

## Summary

In summary, for the reasons stated hereinabove, the Court makes the following rulings:

1. The motions to quash service of process are granted;

2. The plaintiffs may not maintain this suit as a class action;

3. The demurrers of Majestic, Polinger Company, Zupnik, Sanker, Holle, Graff, Roberts, Elsen, Foa, Kirby, Cecchi and Ward as to each count of the motion for judgment are sustained;

4. The demurrer of West Alexandria is sustained as to all causes of action alleged against it for breach of implied warranty, breach of express warranty (other than the statutory warranty), breach of fiduciary duties, improper use of condominium funds, negligent construction, lack of disclosure and antitrust violations; and

5. The demurrer of West Alexandria is overruled as to those causes of action alleged in Counts I and VII for breach of contract (failing to provide what was promised) and for fraud and deceit, as well as claims for breach of the statutory two-year warranty against structural defects.